IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**TODD MAURICE HAYES**,

        Petitioner,

v.                                     Civil Action No. 5:10cv11
                                      (Judge Stamp)

**WARDEN JAMES M. CROSS**,

        Respondent.

## REPORT AND RECOMMENDATION

### I. Procedural Background

The *pro se* petitioner initiated this case on January 22, 2010, by filing a Writ of Habeas Corpus Pursuant to 20 U.S.C. § 2241. (Doc. 1). Pursuant to 18 U.S.C. §§ 3621(b) and 3624(c), the petitioner challenges the Bureau of Prisons' ["BOP"] decision to place him in a Residential Release Center ["RRC"] for less than the maximum allowable twelve months.

On January 22, 2010, the petitioner paid the required filing fee. (Doc. 2). Accordingly, on January 26, 2010, the undersigned made a preliminary review of the file, determined that summary dismissal was not warranted, and directed the respondent to file an answer to the petition. (Doc. 6). The respondent filed a Motion to Dismiss, or in the Alternative, Motion for Summary Judgment on February 25, 2010. (Doc. 12). Because the petitioner is proceeding *pro se*, the Court issued a Roseboro Notice on February 26, 2010. (Doc. 14). On March 19, 2010, the petitioner filed a response. (Doc. 21). On June 8, 2010, the undersigned reviewed this matter and entered an Order directing the respondent to submit the petitioner's official RRC referral form. (Doc. 22). On June 29, 2010, the respondent filed the required document (Doc. 26), together with a supplemental

1

response (Doc. 25) to the petition. On July 7, 2010, the petitioner filed a reply to the supplemental response. (Doc. 29). The case is before the undersigned for a report and recommendation on the petition, the respondent's motion, and the petitioner's motion for immediate release. (Doc. 24).

## II. Factual Background

### A. Events predating the Petition

The petitioner is currently incarcerated at the United States Penitentiary, Bruceton Mills, West Virginia ("USP Hazelton"). (Doc. 13-1, p.6).[1] He is serving a 240 month sentence imposed by the United States District Court for the Southern District of West Virginia on February 2, 2010. (Doc. 13-1, p. 8). His statutory projected release date, via good conduct time, is February 11, 2011, and his full term release date is September 9, 2013. (Doc. 13-1, p. 9).

Pursuant to BOP policy, the petitioner's then case manager, Tammy Titchenell, began his RRC review in August of 2009, approximately 18 months before his projected release date. According to Ms. Titchenell, the petitioner had indicated that he wished to relocate his district of supervision from the Southern District of West Virginia to the Southern District of Ohio and also requested consideration and placement in an RRC for the statutory maximum of 12 months. Ms. Titchenell indicates that based on her discussions with the petitioner and a review of his case file, she determined that he would, in fact, benefit from the maximum 12 month placement. Therefore, she prepared a memorandum, dated August 18, 2009, for review by the Camp Administrator and ultimately the Warden, to be signed by the Warden and forwarded to the Regional Director pursuant to BOP procedures for any placement consideration for more than six months. This memorandum

---

[1]Although the exhibit tendered by the respondent indicates only that the petitioner sis incarcerated at USP Hazelton, there appears to be no dispute that the petitioner is housed in the Satellite Camp associated with USP Hazelton.

recommended the full, statutory maximum of twelve months RRC placement. The Camp Administrator did not agree with this recommendation,[2] and the review for that placement ended at that time.[3] (Doc. 13-1, pp. 3-4).

Thereafter, Ms. Titchenell began the relocation process and drafted a letter, dated November 18, 2009, for the Camp Administrator's signature seeking acceptance by the U.S. Probation Office in the Southern District of Ohio for supervision responsibilities of the petitioner upon his release from custody. (Doc. 13-1, p. 10). Ms. Titchenell transferred to the Secure Female Facility at U.S.P. Hazelton, and prior to her transfer, she had not received a determination letter from the U.S. Probation Office for the Southern District of Ohio. Ms. Titchenell notes that she checked institution records on February 19, 2010, and determined that neither the relocation determination nor an actual RRC referral had been made regarding the petitioner. (Doc. 13-1, pp. 3-4).

## B. Events after the Petition

Following Ms. Titchenell's transfer to the Secure Female Facility, Robert West became the Case Manager at the Satellite Prison Camp at USP Hazelton. Mr. West confirms that as of February 25, 2010, he had not received a final determination from the U.S. Probation Office as to whether they were willing to accept the petitioner into that district for supervision upon release. Mr. West notes that because he had not yet received a determination on the relocation issue, he had not yet submitted a final RRC referral recommendation form to the Camp Administrator and Warden for

---

[2]Specifically, the Camp Administrator handwrote the following on the bottom of the memo and sent it back to Ms. Titchenell: "...I just don't see what special need he has that would justify more than a 6 month placement. 6 months should be more than adequate." (Doc. 1-5, p. 2).

[3]Although neither the respondent, nor Ms. Titchenell refer to the same, it appears that Ms. Titchenell drafted a second Memorandum, dated August 20, 2009, to be signed by the Warden, seeking approval from the Regional Director for an 8 month placement in a RRC. (Doc. 1-5, pp 3-4).

review. (Doc. 13-2, pp. 2-3). Sometime later, USP Hazelton received confirmation that the petitioner's relocation request had been approved. Mr. West maintains that this notification ordinarily would have led to an RRC referral. However, the petitioner initially declined to sign the Community Based Program Agreement because he indicated that he was waiting on the court to act on his petition. Because he would not sign the agreement, his RRC referral was not completed. (Doc. 26-1, pp. 2-3). However, on May 20, 2010, the petitioner signed the Community Based Program Agreement and agreed to the terms and conditions of being placed in an RRC. (Doc. 26-2, p.1).

On June 10, 2010, an RRC Referral recommendation was prepared for the petitioner, recommending a placement range of 150-180 days. (Doc. 26-3). It appears that the petitioner is scheduled to report to the Alvis House residential Program in Columbus Ohio on September 15, 2010. (Doc. 29-2). If nothing changes, the petitioner will spend 150 days in an RRC.

### III. Issues Presented

In his petition, the petitioner asserts that the BOP abused its discretion by relying on a General Counsel memorandum to determine his RRC placements in violation of 18 U.S.C..§ 3624(c). Specifically, the petitioner argues that requiring "unusual or extraordinary circumstances justifying" placement in an RRC beyond six months, and then only with approval from the Regional Director contradicts Congress' directive that RRC placement time be "of sufficient duration to provide the GREATEST LIKELIHOOD of successful reintegration into the community." (Doc. 1, pp. 9-10). In addition, the petitioner argues that the BOP failed to ensure that he received the greatest likelihood of successful reintegration as mandated by Section 36624(c)(6)(c). The petitioner also argues that the BOP has failed to establish an incentives program as mandated by the Second Chance

4

Act. Finally, the petitioner argues that Mr. Myers, the Camp Administrator/Executive Assistant, was not qualified to deny his twelve month and subsequent nine[4] month RRC placement recommendations, and therefore abused his discretion in so doing.

In his initial response to the petition, the respondent argued that the petition should be dismissed because the BOP's determination regarding the duration of the petitioner's residential re-entry center placement is not subject to judicial review, and the petitioner has no standing to challenge the decision in question. In addition, the respondent argued that the petition should be dismissed because the issues were not yet ripe for review because the petitioner had not yet been referred to an RRC placement.

In his supplemental response to the petition, the respondent argues that the matter should be dismissed because the BOP conducted an appropriate review of the petitioner's case and made an appropriate RRC referral recommendation. In addition, the respondent argues that the petition should be dismissed as moot since the petitioner has received the only relief he is entitled to - consideration of his halfway placement in accordance with the factors delineated in 18 U.S.C. § 3621(b).

In reply, the petitioner again argues that the BOP failed to conduct an appropriate review of his case and failed to make and appropriate RRC referral recommendation by relying on policy guidance contained in the BOP's April and November memorandums. In addition, the petitioner maintains that Mr. West, his current case manager, perjured himself when he stated in his supplement declaration that the petitioner had nine visits in the past nine months in an attempt to

---

[4] The undersigned is unclear why the petitioner believes that a nine month RRC placement recommendation was made. His own exhibit clearly indicates that Ms. Titchenell recommended 8 months in her second memorandum. (Doc. 1-5, p. 3).

5

show strong family ties and that a thorough review had been made.[5] In addition, the petitioner argues that Mr. West failed to provide supporting documentation for his conclusion that he has received financial support from the community. Finally, the petitioner alleges that the respondent's argument that Mr. West conducted his review according to policy and the Second Chance Act is "ludicrous because he was clearly guided and influenced by the previous administrative remedy denials by his superiors, [and] Mr. West had already come to the conclusion that the petitioner would be recommended for no more than 6 months RRC placement." (Doc. 29, pp. 5-6).

## IV. **The Second Chance Act**

On April 9, 2008, the Second Chance Act of 2007, Pub.L.No. 110-99, was enacted. It amended 18 U.S.C. § 3624 and provides that the Director of the BOP shall "ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months) under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community." See 18 U.S.C. § 3624(c)(1). The statute provides that those conditions may include confinement in a community correctional facility/community corrections center/residential re-entry center, all of which are commonly known as a "half-way house." The statute provides that the decision to confine a prisoner in a "half-way" house shall be made on an individual basis and shall be made in light of several factors, most of which are identified in 18 U.S.C. 3621(b). See Miller v. Whitehead, 527 F.3d 752 (8th Cir. 2008) [BOP may consider factors in addition to those identified in 3621(b)]. The factors identified in 18 U.S.C. 3621(b) are as follows:

---

The petitioner maintains that he received only six visits in the past 9 months, and the number of visits cited by Mr. West is misleading because when a prisoner's family comes to visit, they normally visit the entire weekend which would account for three visits. (Doc. 29, p. 5).

(1) the resources of the facility contemplated;

(2) the nature and circumstances of the offense;

(3) the history and characteristics of the prisoner;

(4) any statement by the court that imposed the sentence-(A) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or (B) recommending a type of penal or correctional facility as appropriate; and

(5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28."

## V. Analysis

### A. 18 U.S.C. § 3625

In accordance with the Administrative Procedures Act ("APA"), 5 U.S.C. §§ 701 and 702, "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action with the meaning of a relevant statute is entitled to judicial review thereof," except to the extent that a statute precludes judicial review. In this case, the petitioner challenges the length of time the BOP has deemed appropriate for him in an RRC prior to his release. That decision is governed by 18 U.S.C. § 3624(c)(1). As previously noted, that section now provides:

> The Director of the Bureau of Prisons shall, to the extent practicable, ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community. Such conditions may include a community correctional facility.

Because such a determination involves a decision regarding an inmate's place of imprisonment, in making a determination under § 3624(c), the Director must necessarily consider the five factors enumerate in 18 U.S.C. § 3621(b), as outlined previously in this Report. However, pursuant to 18 U.S.C. § 3625, Congress has specifically excluded subsections 3621 and 3624 from

7

judicial review under the APA. See Davis v. Beeler, 966 F.Supp. 483, 489 (E.D.Ky. 1997). Section 3625 states: "[t]he provisions of section 554 and 555 and 701 through 706 of title 5, United States Code, do not apply to the making of any determination, decision, or order under this subchapter." Accordingly, any substantive decision by the BOP with regard to the petitioner's eligibility for RRC placement, or the length of time in an RRC, is not reviewable by this Court. See Lyle v. Sivley, 805 F.Supp. 755, 760 (D.Ariz. 1992). However, even where judicial review under the APA is specifically excluded by statute, the court may still review whether there is clear evidence of unconstitutional conduct or evidence that the agency acted outside the scope of its authority. Webster v. Doe, 486 U.S. 592 (1988); Turner v. Safley, 482 U.S. 78, 84 (1987); Procunier v. Martinez, 416 U.S. 396, 405 (1974); Davis v. Beeler, 966 F.Supp. at 489.

It is well-established that an inmate has no constitutional right to be confined to a particular institution, Meachum v. Fano, 427 U.S. 215, 223 (1976), nor any "justifiable expectation" that he will be confined in a particular prison. Olim v. Waukinekona, 461 U.S. 238 (1983). Thus, because the petitioner has no protected liberty interest in being placed in an RRC prior to his release, and the decision whether to make such placement is clearly a matter of prison management within the knowledge and expertise of BOP officials, this Court cannot intervene in that decision unless a clear constitutional violation occurred. For the reasons discussed below, the undersigned has determined that no such violation has occurred.

The petitioner's primary argument appears to be that two memorandums issued by the BOP negate the provisions of the Second Chance Act, and effectively limit RRC placements to six months or less. Although the petitioner does not attach the memoranda, the undersigned has reviewed numerous cases dealing with challenges to RRC placements under the Second Chance and has

determined that on April 14, 2008, the BOP issued a memorandum entitled "Pre-Release Residential Re-Entry Center Placements Following the Second Chance Act of 2007," which instructed that RRC placement be based on individualized review of each inmate's case. The April 14, 2008 memorandum notes that, under the Act, the- pre-release RRC placement time frame is increased to a maximum allowable 12 months. It further states that:

> While the Act makes inmates eligible for a maximum of 12 months pre-release placements, Bureau experience reflects inmates' pre-release RRC needs can usually be accommodated by a placement of six months or less. Should staff determine an inmate's pre-release RRC placement may require greater than six months, the Warden must obtain the Regional Director's written concurrence before submitting the placement to the Community Corrections Manager.

See Strong v. Schultz, 599 F.Supp2d, 556, 559 (D.NJ 2009). In addition, the BOP issued another memorandum on September 3, 2008,[6] which describes the terms of the Second Chance Act and states generally that [t]he BOP's goal is to place inmates in RRCs for the amount of time necessary to provide the greatest likelihood of successful re-entry into the community." Bernard v. Roal, 2010 WL 2308198 (S.D.N.Y). This second memorandum concludes:

> Because the Second Chance Act prescribes the maximum amount of time for which inmates are eligible for pre-release RRC placement, as 12 months, BOP staff are reviewing each inmate for pre-release RRC placement 17-19 months before the inmates projected release date. Notwithstanding the statutory cap of 12 months, it is the BOP's experience that inmate's re-entry needs can usually be met with 6 months or less in an RRC. **An RRC placement beyond 6 months will only be approved upon a showing of an inmate's extraordinary and compelling re-entry needs**. The BOP will continue to balance each inmate's individual needs with the agency's duty to use its limited resources judiciously and to provide re-entry

---

[6]Although the petitioner quotes from a November 24, 2008 memorandum, the undersigned has been unable to locate said document. However, the language quoted by the petitioner is nearly identical to the September 3, 2008 memorandum.

> services as to many inmates as possible.

Id.

In the two years since the Second Chance Act was passed, courts have frequently examined the BOP policy statements implementing the Act. In particular, much of the recent litigation in this field has focused on whether policy guidance that (1) notes that many inmates can be successfully integrated into society in 180 days or less; and (2) requires regional director approval for placements in excess of six months violate the Act by creating unwarranted institutional and bureaucratic obstacles to 12-month placements.

"The majority view, reflected in numerous trial court opinions, and in the only appellate court decision to have considered this issue, holds that the Bureau of Prisons' requirement of regional director approval, and the agency's stated view that many inmates can have their needs meet [sic] through 180-day RRC placements, do not violate the Act." Ramos v. Holt, 2010 WL 2471707 (M.D.Pa.) (collecting cases). In reaching this conclusion, the opinions have reasoned that these policies reflect the broad discretion given the BOP to implement the Act. Therefore, these cases find nothing fundamentally objectionable about the policies "provided that each inmate receives the individualized consideration of this RRC placement called for by the Act." Id.

The undersigned recognizes that two cases have reached an opposite conclusion. See Kreuger v. Martinez, 665 F.Supp.2d 477, 482-83 (M.D.Pa. 2009); Strong v. Schultz, 599 F.Supp.2d 556, 563 (D.N.J.2009). Kreuger concluded that "the BOP has functionally placed a lid on the discretion that it wants staff to exercise," and that "the institutional preference for a RRC placement of six months or less...is contrary to the apparent purpose of the Second Chance Act. Kreuger at 483. Strong reached a similar conclusion and also found that the requirement that written correspondence

be obtained of the Regional Director "impermissibly constrains staff's discretion." Strong at 563.

However, the Second Chance Act does not vest discretion in "staff"but instead in the Director of the BOP. Therefore, it is consistent with the Act for the BOP to require the involvement of a specific individual subordinate to the director in exercising that discretion. Bernard supra. Furthermore, the memoranda's requirement for "extraordinary" showing for placements longer than six months has been upheld as consistent with the exercise of administrative discretion because it constitutes "a standard for deciding whether to grant a request for extended placement in an RRC." Id. (collecting cases). Finally, the limitation on access to the RRC "is rationally related to one of the statutory factors which govern prison placements; namely, the allocation of limited available prison resources." McDonald v. Obama, 2010 WL 1526443 (M.D. Pa. Mar. 15, 2010) at *8 (citing 18 U.S.C. § 3621(b)). Accordingly, the undersigned has concluded that to the extent the petitioner rests his argument on BOP's memoranda, the same fails to state a basis for a grant of habeas corpus. Accordingly, the issue becomes whether the petitioner was properly reviewed for RRC placement utilizing the required five factors.

In recommending that 150-180 days would be a sufficient amount of time for the petitioner to take full advantage of the transitional services and programs in the RRC to facilitate his transition back into the community, staff specifically noted that: (1) there are available RRC facilities in the petitioner's release area; (2) the nature and circumstances of the petitioner's offense are eligible for RRC placement; (3) the history and characteristics of the petitioner: He has indicated that he initially intends to obtain gainful employment and maintain community ties through a RRC placement; (4) the sentencing court in the Southern District of West Virginia did not make any statement in the judgment and commitment order regarding RRC placement; and (5) there is no pertinent policy by

11

the sentencing commission. (Doc. 26-3). Moreover, although the Referral Form for RRC Placement is sparse in it recitation of the history and characteristics of the petitioner, it must be read in conjunction with the March 17, 2010, Progress Report and other documents relating to the petitioner which were sent to the Community Corrections Office for consideration in making its recommendation to a particular RRC for placement. Taking all of ths information into account, Mr. West determined that because the petitioner has been serving a 20 year sentence and has not yet secured post-incarceration employment, only a couple of months in an RRC would not suffice. However, although he has not yet secured employment, it is Mr. West's professional opinion that the petitioner should have no difficulty doing so and should, in fact, be able to so within the 5-6 months recommended. Mr. West based that opinion on the fact that the petitioner obtained an Associate's degree from Ashland (KY) College and a received a Certificate of Completion from Purdue University for a Pest Control Technology course. Furthermore, Mr. West finds the petitioner to be highly motivated and notes that he received Good to Outstanding institution work ratings over the past year. Finally, Mr. West concluded that the petitioner has important community ties and family support that should assist with his successful transition. (Doc. 26-1, pp. 4-5).

Accordingly, as required by the Second Chance Act, the petitioner's Unit Team made its review on an individual basis and considered the appropriate factors in recommending that he be placed in an RRC for a period of five to six months. The fact that the petitioner's circumstances under that review could warrant two different interpretations[7] of his need for RRC placement does not establish that the BOP was either derelict in its duties or wrong. Moreover, there is no evidence

---

[7]Specifically, one case manager's conclusion that a full 12-month placement was appropriate versus a second case manager's conclusion that 5-6 months was sufficient.

that the determination was arbitrary, capricious, or an abuse of discretion. Therefore, the petitioner cannot show that BOP officials violated the Second Chance Act, and his petition should be dismissed.

## VI. Recommendation

Based on the foregoing, the undersigned recommends that the respondent's Motion to Dismiss, or in the Alternative, Motion for Summary Judgment (Doc. 12) be **GRANTED,** the petitioner's §2241 petition be **DENIED** and **DISMISSED with prejudice**; and the petitioner's Letter Motion for immediate release or authorization to be placed on home confinement (Doc. 24) be **DENIED**.

Within fourteen (14) days after being served with a copy of this Recommendation, any party may file with the Clerk of the Court, written objections identifying the portions of the Recommendation to which objections are made, and the basis for such objections. A copy of such objections should also be submitted to the Honorable Frederick P. Stamp, Jr., United States District Judge. Failure to timely file objections to the Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk of the Court is directed to mail a copy of this Report and Recommendation to the *pro se* petitioner by certified mail, return receipt requested, to his last known address as reflected on the docket sheet. The Clerk of the Court is further directed to prove a copy to all counsel of record,

as applicable, as provided in the Administrative Procedures for Electronic case Filing in the United States District Court for the Northern District of West Virginia.

DATED: 7-12-2010

_____
DAVID J. JOEL
UNITED STATES MAGISTRATE JUDGE